# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# WESTERN DIVISION

| | | |
|---|---|---|
| **EL PASO E&P COMPANY, L.P.,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.:  7:09-CV-1621-RDP** |
| | } | |
| **CMV JOINT VENTURE, et al.,** | } | |
| | } | |
| **Defendants.** | } | |

## MEMORANDUM OPINION

This case is before the court on HighMount Black Warrior Basin LLC and ConocoPhillips Company's[1] Motion to Remand or, in the Alternative, to Abstain (Doc. #9), filed September 11, 2009, and El Paso E&P Company, L.P.'s Motion to Transfer (Doc. #5), filed September 2, 2009. For the following reasons, the court concludes that El Paso's Motion to Transfer is due to be granted and HighMount and ConocoPhillips's Motion to Remand or, in the Alternative, to Abstain is due to be deferred for consideration.

## I.     STATEMENT OF FACTS[2]

In August 1980, John M. Lutz, Jr., as trustee under the Last Will and Testament of John M. Lutz, Sr., and Woodrow Hobson, Jr. owned an undivided three-fourths interest in the minerals, less certain oil and gas rights, in, on, and under three tracts of land in Tuscaloosa County, Alabama (the "Underlying Property"): (a) E½ of SW¼ and SW¼ of SW¼ of Section 17, T17S, R8W ("Section

---

[1]ConocoPhillips joined HighMount's Motion in full.  (Doc. #11).

[2]The court supplies the following statement of facts based on the allegations made in El Paso's Complaint filed in the Circuit Court of Tuscaloosa County.

17"); (b) NE¼ or SW¼ less the east 12.5 acres thereof, in Section 18, T17S, R8W ("Section 18"); and (c) S½ of NE¼, Section 25, T17S, R9W ("Section 25").  (Compl. ¶ 5).

On August 6, 1980, Lutz, Hobson, and Hobson's wife, Patsy L. Hobson, granted a coal lease (the "Coal Lease"), covering the Underlying Property, to the United States Steel Corporation. (Compl. ¶ 6).  Under the terms of the Coal Lease, the arrangement expired after thirty years but could be extended by coal mining operations.  (Compl. ¶ 7).  In addition to coal mining rights, the Coal Lease granted to the lessee the right to drill coalbed methane wells but only if those wells were drilled in connection with coal mining operations.  (Compl. ¶ 6).  The Coal Lease did not contain any provision regarding the payment of royalties or the pooling of the Underlying Property with other property to form drilling or production units for coalbed methane wells.  (Compl. ¶ 6).  Presently, the Coal Lease is owned by ConocoPhillips Company ("ConocoPhillips") (75%) and HighMount Black Warrior Basin LLC[3] ("HighMount") (25%).  (Compl. ¶ 8).

In December 1996, the following individuals owned the Underlying Property in the following proportions: (1) Grace W. Lutz, as successor trustee under the Last Will and Testament of John M. Lutz, Sr., owned 50%; (2) Woodrow Hobson, Jr. and his wife, Patsy L. Hobson, as joint tenants owned 25%; (3) Sheila H. Crafton owned 12.5%; and (4) Angela H. Vawter owned 12.5%.  (Compl. ¶ 9, Table).  On December 19, 1996, the owners granted an oil, gas, and mineral lease, covering their interest in the Underlying Property as well as other property, to CD Exploration, Inc. (the "OGM Lease").  (Compl. ¶ 10).  The OGM Lease specifically provided for coalbed methane extraction and was recorded in the Deed Book Records of the Probate Court of Tuscaloosa County.  (Compl. ¶ 10).

---

[3]HighMount is the successor to Dominion Black Warrior Basin, Inc., which El Paso initially named as a Defendant in this case.

2

By merger, El Paso E&P Company, L.P. ("El Paso") is the successor to CD Exploration, Inc. (Compl. ¶ 10).[4]

On August 2, 1999, Lutz, the Hobsons, Crafton, and Vawter, by two separate instruments, granted an oil, gas, and mineral lease, which covered their interest in the Underlying Property, to River Gas Corporation, which, at that time, owned the Coal Lease. (Compl. ¶ 13). This lease (the "Top Lease"), structured to take effect at the expiration of the Coal Lease, specifically included coalbed methane within its scope. (Compl. ¶ 13).[5] Two days later, Lutz, the Hobsons, Crafton, and Vawter, again by two separate instruments, amended the Coal Lease to add a royalty clause applicable to production of coalbed methane and a clause allowing the Underlying Property to be pooled with other property in order to form drilling or production units for coalbed methane wells. (Compl. ¶ 14). According to El Paso's allegations, although the OGM Lease, the Top Lease, and the Coal Lease post-amendment are seemingly at odds, insofar as coalbed methane drilling is concerned, the OGM Lease is senior because it was "of record in the Probate Court of Tuscaloosa County, Alabama" in August 1999. (Compl. ¶¶ 13, 14).

In late 2001, Phillips Petroleum Company, which, at that time, was the lessee under the Coal Lease, drilled a well in Section 25 of the Underlying Property. (Compl. ¶ 15). Allegedly contrary to the terms of the Coal Lease and precluded by the OGM Lease, Phillips did not drill the well in connection with any coal mining operations. (Compl. ¶ 15). Relatedly, Phillips filed a Declaration of Unit and Voluntary Pooling Agreement on October 19, 2001. (Compl. ¶ 16). Under that

---

[4]Presently, the OGM Lease is owned by El Paso (75%) and CMV (25%) insofar as it covers Section 18 of the Underlying Property and by El Paso (85%) and CMV (15%) insofar as it covers Sections 17 and 25 of the Underlying Property. (Compl. ¶ 11).

[5]The Top Lease currently is owned by ConocoPhillips and HighMount in the same proportion as they own the Coal Lease. (Compl. ¶ 13).

agreement, Phillips intended to pool the OGM Lease and the Coal Lease, in addition to other leases, to form a forty acre drilling and production unit composed of land within Section 25. (Compl. ¶ 16). On August 1, 2003, ConocoPhillips (successor by merger to Phillips) and HighMount (the eventual assignee of a portion of the Coal Lease) filed a Declaration of Unit and Voluntary Pooling Agreement. (Compl. ¶ 17). That agreement amended the October 19, 2001 agreement and expanded the covered property in Section 25. (Compl. ¶ 17).

In short, this case turns on "who owns the right to commercially extract and sell coalbed methane" from the Underlying Property. (Doc. #12 at 2). "HighMount and ConocoPhillips own [the Coal Lease] which they claim conveys to them the exclusive right to produce coalbed methane from" the Underlying Property. (Doc. #12 at 2). On the other hand, "El Paso claims that . . . HighMount and ConocoPhillips own the right to extract coalbed methane only when that is done in connection with coal mining operations." (Doc. #12 at 2).

## II.    PROCEDURAL HISTORY

On May 31, 2007, El Paso filed this lawsuit in the Circuit Court of Tuscaloosa County, Alabama. (Doc. #1-1 at 6). The Complaint included the following causes of action: (1) a declaratory action regarding the OGM Lease, the Coal Lease, and the Top Lease insofar as they concern the drilling for coalbed methane from the Underlying Property; (2) trespass; (3) ejection; (4) conversion; (5) an accounting; (6) waste; and (7) unjust enrichment. (Compl. at 7-10).

El Paso, as Plaintiff, named the following Defendants: (1) CMV Joint Venture; (2) ConocoPhillips Company; and (3) Dominion Black Warrior Basin, Inc. (Doc. #1-1 at 13). CMV, however, is the purported co-owner, along with El Paso, of the extracted coalbed methane from the Underlying Property. (Doc. #1-1 at 13). In this regard, "CMV [was] named as a Defendant . . .

4

because it owns an interest in the [OGM Lease] and is accordingly a necessary party . . . ." (Doc. #1-1 at 13). To be clear, "no specific relief [was] sought against CMV" by El Paso. (Doc. #1-1 at 13).

While the state court litigation was pending, CMV filed a voluntary petition for relief under Chapter 11 in the United States Bankruptcy Court for the Southern District of Texas ("Southern District of Texas" or "bankruptcy court"). (Doc. #7-2 at 1). Accordingly, on February 5, 2009, CMV filed a Suggestion of Bankruptcy in the Circuit Court of Tuscaloosa County and requested a "stay [of] all proceedings in accordance with 11 U.S.C. § 362." (Doc. #7-3 at 1). On February 9, 2009, the Circuit Court of Tuscaloosa County stayed the case by transferring it to the administrative docket. (Doc. #7-4). Thereafter, El Paso petitioned the Southern District of Texas to lift the automatic stay for the sole purpose of removing the state court case to this court and requesting transfer to the bankruptcy court. (Doc. #7-5 at 1). CMV, as debtor, did not oppose this motion. (Doc. #7-5 at 1). Accordingly, the Southern District of Texas "modified" the automatic stay "to allow El Paso to remove the Litigation . . . and transfer [the case] to [that] court . . . ." (Doc. #7-5 at 1).

Consequently, after the stay was lifted, El Paso removed the case to this court on August 13, 2009. (Doc. #1). On September 2, 2009, El Paso filed its Motion to Transfer Venue to the Southern District of Texas. (Doc. #5). In response, on September 11, 2009, HighMount filed its Motion to Remand or Abstain. (Doc. #9). On September 14, 2009, the court ordered briefing on both Motions. (Doc. #10). Both Motions have been fully briefed and are now properly under submission.

## III.   DISCUSSION

As a preliminary matter, the court notes that it has jurisdiction over El Paso's claims. According to 28 U.S.C. § 1334(a)-(b), "the district courts shall have original and exclusive jurisdiction of all cases under title 11" and "original but not exclusive jurisdiction of all civil

proceedings arising under title 11, or arising in or related to cases under title 11." Based on §

1334(a)-(b), there are four types of matters over which the district court has bankruptcy jurisdiction:

(1) "cases under title 11;" (2) "proceeding[s] arising under title 11;" (3) "proceedings arising in a case

under title 11;" and (4) "proceedings related to a case under title 11." *In re Royal*, 197 B.R. 341,

346-47 (Bankr. N.D. Ala. 1996) (quoting *In re Wood*, 925 F.2d 90, 93 (5th Cir. 1987)).[6]

According to El Paso, "[a]t the very least, this litigation is related to CMV's Chapter 11

Bankruptcy Case pending in the Southern District of Texas . . . ." (Doc. #12 ¶ 19). The court agrees.

Proceedings are "related to" title 11 cases when "the outcome of the proceeding could conceivably

have an effect on the estate being administered in bankruptcy." *In re Lemco Gypsum, Inc.*, 910 F.2d

784, 788 (11th Cir. 1990) (quoting *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984)). As

El Paso explained, although a favorable judgment would result in a positive impact to the bankruptcy

estate, "[i]f . . . the Gas Leases do in fact grant both El Paso and CMV . . . a valid interest in the

Disputed Property, . . . then CMV's bankruptcy estate would certainly be [affected] in a negative

manner by a ruling that these leases are invalid or subordinate to Defendants' leases." (Doc. #12 at

12). The impact of any ruling on these claims certainly falls easily within the broadly articulated

*Lemco Gypsum* standard. *See Edge Petroleum Operating Co. v. GPR Holdings, L.L.C.*, 483 F.3d

292, 298 (5th Cir. 2007) ("[A]n action is 'related to' bankruptcy if the outcome could alter, positively

or negatively, the debtor's rights, liabilities, options, or freedom of action or could influence the

---

[6]In bankruptcy parlance, there is a critical distinction between a "case" and a "civil proceeding." A case, unlike a civil proceeding, must be prosecuted in federal court. *See, e.g.*, 1-3 COLLIER ON BANKRUPTCY § 3.01 (2010) ("[T]he jurisdiction of the district courts over title 11 'cases' is original and exclusive, while the jurisdiction over civil proceedings arising under title 11, or arising in title 11 cases, or related to those cases, is original but not exclusive."); 13D FEDERAL PRACTICE & PROCEDURE – JURISDICTION § 3570 (3d ed. 2010) ("This means that in civil proceedings arising in or related to bankruptcy cases, there is concurrent jurisdiction – such matters may be heard by either federal or state courts.").

administration of the bankrupt estate.") (citation omitted).   Accordingly, this case is a civil proceeding related to a case under title 11.[7]

Although the court has jurisdiction, Defendants HighMount and ConocoPhillips argue for abstention or, in the alternative, remand.  Bankruptcy jurisdiction is subject to three carve-outs – one mandatory and two discretionary.  Title 28 U.S.C. § 1334(c)(2), the so-called mandatory abstention provision, provides as follows:

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a cause under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such a proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

28 U.S.C. § 1334(c)(2).  Parsing this provision reveals three necessary elements for mandatory abstention: (1) "the proceeding is based on a state law claim which, although related to a title 11 case, does not arise under title 11 or out of a title 11 case;" (2) "the proceeding could not have been commenced in federal court but for the bankruptcy;" and (3) "the state court can timely adjudicate the cause of action."  *Royal*, 197 B.R. at 349 (citation omitted).

Additionally, a court, in its discretion, may decline the exercise of bankruptcy jurisdiction. Under 28 U.S.C. § 1452(b), the "equitable remand" provision, the court, to which a party removes a civil proceeding arising under, arising in, or related to a case under title 11, "may remand such

---

[7]And to be certain, El Paso has not argued (nor could it argue) that this dispute satisfies the more exacting "arising under" or "arising in" standards.  "Congress used the phrase 'arising under title 11' to describe those proceedings that involve a cause of action created or determined by a statutory provision of title 11. . . . The meaning of 'arising in' proceedings . . . seems to be a reference to those 'administrative' matters that arise only in bankruptcy cases.  In other words, 'arising in' proceedings are those that are not based on any right expressly created by title 11, but nevertheless, would have no existence outside of the bankruptcy."  *Wood*, 825 F.2d at 96-97.  This case's state law claims do not satisfy the rigors of these particular standards.

claim or cause of action on any equitable ground."  Alternatively, under 28 U.S.C. § 1334(c)(1), the "discretionary abstention" provision, "in the interest of justice, or in the interest of comity with State courts or respect for State law," the district court may abstain from exercising jurisdiction over civil proceedings arising under, arising in, or related to a cause under title 11.

HighMount and ConocoPhillips argue that mandatory abstention applies to this case.  The court readily concludes that two of the three requirements for mandatory abstention are satisfied.

First, this case concerns exclusively state law causes of action.  In El Paso's complaint, there are requests for a declaratory judgment regarding the validity of various leases and an accounting. (Compl. at 7-8).  Additionally, El Paso alleges causes of action for trespass, ejection, conversion, waste, trespass, and unjust enrichment/disgorgement.  (Compl. at 8-9).  These claims arise under the common law and statutory law of Alabama.

Second, this case could not have proceeded in federal court but for CMV's bankruptcy petition.  According to the Complaint, El Paso "is a Delaware Limited Partnership," CMV Joint Venture "is an Alabama partnership," ConocoPhillips "is a Delaware Corporation," and HighMount "is an Alabama corporation." (Compl. ¶¶ 1-4).  El Paso, as a limited partnership, "is a citizen of each state in which any of its partners, limited or general, are citizens." *Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C.*, 374 F.3d 1020, 1021 (11th Cir. 2004) (citing *Carden v. Arkoma Assoc.*, 494 U.S. 185, 195-96 (1990)).  The record contains no indication as to the citizenship of El Paso's general or limited partners.  But even assuming that El Paso's partners are citizens only of Delaware, Defendant ConocoPhillips is a Delaware corporation, which consequently defeats complete diversity.  Moreover, the parties have not identified any papers in the removal documents,

provided by El Paso, tending to establish the amount in controversy.  *See generally Pretka v. Kolter City Plaza II, Inc.*, No. 10-11471, 2010 U.S. App. LEXIS 11686, at *17-19 (11th Cir. June 8, 2010).

The dispositive issue (and the only seriously contested issue) is whether the Circuit Court of Tuscaloosa County can timely adjudicate the lawsuit.  Courts have developed varied approaches to assess this concern.  Some courts have keyed the inquiry to the needs of the bankruptcy case.  *See, e.g.*, *In re World Solar Corp.*, 81 B.R. 603, 612 (Bankr. S.D. Cal. 1988).  Other courts have required specific factual evidence.  *See, e.g.*, *Renaissance Cosmetics, Inc. v. Dev. Specialists Inc.*, 277 B.R. 5, 14 (S.D.N.Y. 2002).  In any event, courts generally have agreed that "[t]he moving party does not carry its burden merely by arguing that a proceeding *can* be adjudicated in state court."  *In re Georgou*, 157 B.R. 847, 851 (N.D. Ill. 1993) (citing *In re Leco Enters., Inc.*, 144 B.R. 244, 251 (S.D.N.Y. 1992)) (emphasis added).

But based on the posture of this case, the court is unable to evaluate timeliness under any of the varied judicial approaches.  Once CMV filed for bankruptcy, the automatic stay under 11 U.S.C. § 362 halted coordinate litigation, including this lawsuit.  As a practical matter, however, "[i]f a state action is pending against numerous defendants and one of the defendants becomes the subject of a bankruptcy, the entire state court action is not stayed.  Those claims which involve the bankrupt defendant are stayed, and the pending state court action continues, if it can, against the remaining defendants." *Ni Fuel Co. v. Jackson*, 257 B.R. 600, 615 (N.D. Okla. 2000); *see also Fortier v. Dona Anna Plaza Partners*, 747 F.2d 1324, 1330 (10th Cir. 1984) ("There is nothing in the statute which purports to extend the stay to causes of action against solvent co-defendants of the debtor."). Accordingly, when less than all of the parties are insolvent and correspondingly seek bankruptcy protection, the litigation may proceed notwithstanding the debtor's absence.

But in this case, CMV's presence is procedurally required.  In *Johnston v. White-Spunner*, the Alabama Supreme Court, in the context of compulsory joinder rules, held that "[i]n an action where the final decree affects title, ownership, or interest in real property each possessor of title, ownership or interest must be made a part to the action."  342 So. 2d 754, 759 (Ala. 1977) (citing ALA. R. CIV. P. 19; *Davis v. Burnette*, 341 So. 2d 118 (1976); *Dews v. Peterson*, 219 So. 2d 903 (1969); *Snodgrass v. Snodgrass*, 101 So. 837 (Ala. 1924)).  According to El Paso, therefore, CMV's involvement is necessary because "[t]his case involves title to real property in which the debtor, CMV, owns (or at least claims to own) an interest."  (Doc. #12 at 10).  HighMount and ConocoPhillips do not argue that CMV is a dispensable party, and the court assumes the applicability of the *Johnston* rule.[8]  As a result of CMV's indispensability, El Paso contends that "[t]he state court would therefore not be able to proceed with this litigation until after the Bankruptcy Case is resolved and/or the stay imposed by 11 U.S.C. § 362 is lifted."  (Doc. #12 at 11).  In response, Defendants, implicitly acknowledging that the automatic stay precludes further state court action, suggest that El Paso could and should request the bankruptcy court to lift the stay.  (Doc. #14 at 4).[9]

---

[8] In *Ex parte Nottingham*, 522 So. 2d 777, 777 (Ala. 1988), the Alabama Supreme Court, for purposes of a *venue statute*, analyzed "whether a leasehold interest in real property is considered real or personal property."  The court held "that an estate for years is a chattel real and is considered to be personal property."  *Id.* at 778.  Under Alabama law, therefore, there is an open question whether the *Nottingham* characterization applies only in the context of venue.  Defendants have not raised this issue; consequently, the court expresses no opinion whatsoever as to the application of *Nottingham* to the present controversy.

[9] HighMount, in its most recent filing, argues that the § 362 stay is inapplicable to this case. (Doc. #20 at 2-4).  According to HighMount, the stay applies only to proceedings "against" the debtor, and here, although CMV is a defendant, its interests are actually aligned with Plaintiff El Paso.  (Doc. #20 at 3).  In support of this position, HighMount relies on *Maritime Electric Co. v. United Jersey Bank*, 959 F.2d 1194, 1204 (3d Cir. 1991), for the proposition that "[t]he statute does not address actions brought by the debtor which would inure to the benefit of the bankruptcy estate."  However, HighMount's arguments are off the mark.

First, HighMount disregards the Third Circuit's clarification in *Maritime Electric* that "[w]hether a specific judicial proceeding falls within the scope of the automatic stay must be determined by looking at the proceeding 'at its inception.'"  959 F.2d at 1204 (citation omitted).  Accordingly, despite HighMount's suggestion that the parties *now* should be judicially realigned, at the lawsuit's inception, CMV was named as a defendant in this action.  Under *Maritime Electric*, therefore, this is an action "against" the debtor.

10

In short, whether the bankruptcy court is willing (or able) to lift the stay controls whether the Circuit Court of Tuscaloosa County may timely adjudicate the case. The decision whether to remand this case pursuant to § 1334(c)(2) necessarily turns on a contingency beyond the control of the parties or this court. Therefore, this court is unable to meaningfully evaluate HighMount and ConocoPhillips's mandatory abstention argument absent needless conjecture regarding the Southern District of Texas's amenability to lifting the stay.

This impasse, however, is not necessarily terminal. After *Sinochem International Co. v. Malay International Shipping Corp.*, 549 U.S. 422, 432 (2007), a district court's ordering of non-merits considerations, such as jurisdiction[10] and venue, has become somewhat discretionary. As the

---

Second, and more importantly, the subject matter of this case weakens the significance of the "plaintiff" and "defendant" labels. Even if CMV is properly considered a plaintiff rather than a defendant, this case turns on the ownership of property, which is a zero-sum game. That is, a judicial declaration regarding ownership status, which El Paso has requested, necessarily divests the losing parties of their contested claim to the subject property. In this regard, a declaration favorable to HighMount and ConocoPhillips would dilute CMV's bankruptcy estate, which thwarts the stay's purpose of "protect[ing] the bankrupt's estate from being eaten away by creditors' lawsuits and seizure of property before the trustee has had a chance to marshal the estate's assets . . . ." *Maritime Elec.*, 959 F.2d at 1204 (citations omitted). This dynamic transforms the relationship between the opposing parties into one virtually analogous to a claimant and a counter-claimant, in which case both sides are making assertions against the other. Coupling this consideration with CMV's procedural necessity, which HighMount and ConocoPhillips have never contested, warrants application of the stay to the entire controversy.

Moreover, because the Southern District of Texas has determined implicitly that the stay covers this case by granting El Paso's modification request, it is for that court to determine whether to lift the stay in this case. *See Stamm v. Rapco Foam, Inc.*, 21 B.R. 715, 724 (W.D. Pa. 1982) ("Without such a scheme, bankruptcy courts in one district would interfere with the orderly administration of a case filed in another district. In the instant case it would not be appropriate for this court to lift the automatic stay of an equal court in [another district] and allow the plaintiffs to proceed to suit against the debtor."). Accepting HighMount's argument would require this court to improperly interfere with the Southern District of Texas's management of CMV's bankruptcy.

[10]Because abstention under § 1334(c)(2) is mandatory, courts have divided as to whether the provision is jurisdictional. *Compare Meredith v. Clayton Homes, Inc.*, No. 06-4117, 2007 U.S. Dist. LEXIS 28370, at *11 (W.D. Ark. Apr. 17, 2007) ("[M]andatory abstention is jurisdictional: where the factors supporting mandatory abstention are present, the court lacks jurisdiction and remand is required.") (citation omitted), *and Global Underwriting Mgmt., Inc. v. Chatham Underwriting Mgmt., Inc.*, 147 B.R. 601, 503 (Bankr. S.D. Fla. 1992) ("[I]t is proper to consider the motion to abstain first because it is jurisdictional and dispositive.") (citation omitted), *with Robinson v. Mich. Consol. Gas. Co., Inc.*, 918 F.2d 579, 584 (6th Cir. 1990) ("Mandatory abstention under section 1334(c)(2) is not jurisdictional and must be raised in a timely motion.") (citation omitted). For purposes of this decision, the court uses the label "jurisdictional" only as shorthand.

Supreme Court explained, "jurisdictional questions ordinarily must precede merits determinations in dispositional order, [but] there is no mandatory sequencing of jurisdictional issues." *Sinochem*, 549 U.S. at 431; *see also In re LimitNone, LLC*, 551 F.3d 572, 577-78 (7th Cir. 2008) (applying *Sinochem* to cross motions to remand and to transfer).

Relatedly, in the context of bankruptcy jurisdiction and a motion to transfer, courts have developed two competing theories regarding the proper order of review. Some courts have concluded "that the bankruptcy court in which the bankruptcy is pending (usually referred to as the 'home court') is in the best position to determine the issues underlying motions to abstain or remand." *In re ScanWare, Inc.*, 411 B.R. 889, 895 (Bankr. S.D. Ga. 2009) (collecting cases). "The theory underlying this argument 'is often referred to as the conduit court theory because it treats the local bankruptcy court as a mere conduit with little role in determining where the removed lawsuit should be heard.'" *Id.* at 896 (quoting *Frelin v. Oakwood Homes Corp.*, 292 B.R. 369, 380 (Bankr. E.D. Ark. 2003)). "Under the conduit court theory, the local bankruptcy court does little more than determine the initial jurisdictional issue and whether the removal notice is properly and timely filed." *In re AG Indus., Inc.*, 279 B.R. 534, 540 (Bankr. S.D. Ohio 2002) (citation omitted). "If properly filed and jurisdiction is established under § 1334, the local bankruptcy court transfers the state court matter to the home bankruptcy court under the change of venue statute and allows the home bankruptcy court to make the final decision whether to keep or remand the matter to state court." *Id.* (citation omitted). Alternatively, "[a]nother line of case law holds that the bankruptcy court to which the state court lawsuit is removed ('the local bankruptcy court') has the right to decide a pending motion to abstain or remand before determining whether venue is proper in the home bankruptcy court." *ScanWare*, 422 B.R. at 896 (quoting *Frelin*, 292 B.R. at 379) (collecting cases).

Given the facts of this case, and the corresponding indeterminacy of the mandatory abstention's timely adjudication criterion, the court concludes that deciding first whether to transfer this case is the sound course of action.  And this conclusion is unaffected by HighMount and ConocoPhillips's request to abstain under § 1334(c)(1) or, in the alternative, to remand on equitable grounds. Specifically, courts generally consider the following twelve factors when deciding whether to abstain under § 1334(c)(1): (1) the effect of abstention on the efficient administration of the bankruptcy estate; (2) the extent to which state law issues predominate over bankruptcy issues; (3) the difficulty or unsettled nature of the applicable law; (4) the presence of a related proceeding commenced in state court or other non-bankruptcy court; (5) the basis of bankruptcy jurisdiction, if any, other than 28 U.S.C. § 1334; (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (7) the substance rather than form of an asserted "core" proceeding; (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court; (9) the burden of the bankruptcy court's docket; (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties; (11) the existence of a right to a jury trial; and (12) the presence in the proceeding of non-debtor parties.  *In re Norrell*, 198 B.R. 987, 995-96 (Bankr. N.D. Ala. 1996) (citing *In re Tuscon Estates, Inc.*, 912 F.2d 1162, 1167 (9th Cir. 1990)).  A different set of eight factors are relevant when determining whether to remand on equitable grounds: (1) *forum non conveniens*; (2) that the entire action of a bifurcated matter should be tried in the same court; (3) that a state court is better able to resolve state law questions;(4) expertise of a particular court; (5) judicial economy; (6) prejudice to the involuntarily removed party; (7) comity; and (8) the lessened

13

possibility of an inconsistent result. *Norrell*, 198 B.R. at 997 (citing *Browning v. Navarro*, 743 F.2d 1069, 1076 n.21 (5th Cir. 1984)).

The bankruptcy court is in the best position to assign relative weight to these respective factors, which require evaluation of the state court claims vis-a-vis the bankruptcy proceedings. In particular, only the bankruptcy court has the requisite familiarity with the title 11 case necessary to consider the comparative advantage of integrating the state court litigation with the bankruptcy. *See, e.g.*, *Thomason Auto Group, LLC v. China Am. Coop. Auto., Inc.*, No. 08-3365, 2009 U.S. Dist. LEXIS 22669, at *13 (D.N.J. Feb. 27, 2009) ("The reason to transfer the case to the home court of the bankruptcy filing is because the home court is in the best position to evaluate the claims and determine whether remand is appropriate. Transferring the case is particularly appropriate when the court to which the case has been removed has no interest in the proceedings.") (citations and internal quotation marks omitted); *George Junior Republic in Pa. v. Williams*, No. 07-4537, 2008 U.S. Dist. LEXIS 22682, at *16 (E.D. Pa. Mar. 21, 2008) ("[Considering the motion to transfer first] is particularly appropriate when the court to which the case has been removed has no interest in the proceedings but for the operation of section 1478(a) mandating that removal of a state court action be to the bankruptcy court in the district in which the civil action is pending.") (citations omitted).

Moreover, although statutorily distinct, courts generally analyze discretionary abstention and equitable remand under the same framework as mandatory abstention. *See, e.g.*, *Smith v. Wal-Mart Stores, Inc.*, 305 F. Supp. 2d 652, 658 n.8 (S.D. Miss. 2003). According to the Bankruptcy Court for the Northern District of Alabama:

> Together, sections 1452(b) and 1334(c) strongly evince a congressional policy that, absent countervailing circumstances, the trial of state law created issues and rights should be allowed to

14

> proceed in state court, at least where there is no basis for federal
> jurisdiction independent of section 1334(b) *and the litigation can be
> timely completed in state court*.  Because the statutes are similar in
> purpose and spirit, circumstances which weigh in favor of
> discretionary abstention or dictate mandatory abstention under the
> respective subsections of section 1334(c), likewise weigh in favor of
> or constrain remand under section 1452(c).

*Norrell*, 198 B.R. at 998 (emphasis added).  As the *Norrell* court clarified, these three considerations – mandatory abstention, discretionary abstention, and equitable remand – are conceptually intertwined and, at least in part, hinge on the relative timeliness and efficiency of adjudication in state court rather than bankruptcy court.  In short, the possible applicability of alternative bases for remand or abstention does not displace the court's conclusion that transfer should be decided first.

Additionally, this sequencing decision is further reinforced because transfer is particularly appropriate in this case.  Two possible statutory vehicles exist for transferring this case to the Southern District of Texas.  First, under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  Second, under 28 U.S.C. § 1412, "[a] district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties."  Courts have split as to which provision exclusively governs the transfer of civil proceedings related to a bankruptcy case.  *See, e.g.*, *Dunlap v. Friedman's, Inc.*, 331 B.R. 674, 680 (S.D. W. Va. 2005) ("[S]ection 1412 is the appropriate statute for venue transfer purposes in [a] related-to action."); *Jones Searcy v. Knostman*, 155 B.R. 699, 707 (S.D. Miss. 1993) ("[D]isputes relative to change of venue in 'related to' proceedings should be governed by 28 U.S.C. § 1404(a) . . . ."); *see also* 1 COLLIER ON BANKRUPTCY ¶ 4.05[2] (2010) ("It has been held by some courts that section 1404(a) is applicable to motions seeking to change the

venue of adversary proceedings.  Whether this is a supportable result is dubious, at least when section 1404 is considered to be the only applicable section, as opposed to a holding that both section 1404(a) and 1412 are applicable, as is the case with respect to the removal sections.").  In this case, however, HighMount and ConocoPhillips, although acknowledging the split, suggest that neither § 1404(a) nor § 1412 authorize transfer, but they do not argue for the exclusivity of either provision. (Doc. #9 at 17-18).  Accordingly, the court assumes without deciding that both statutory transfer provisions apply to civil proceedings related to a bankruptcy case.

First, § 1404(a) does not authorize the transfer of this case.  "Motions to transfer pursuant to § 1404(a) are subject to a two-step analysis that examines, first, whether the action could originally have been brought in the proposed transferee forum, and second, whether a balancing of the convenience of the parties and the interest of justice favors transfer in the specific case." *First Fin. Bank v. CS Assets, LLC*, No. 08-731, 2009 U.S. Dist. LEXIS 37885, at *5 (S.D. Ala. May 4, 2009) (citation omitted).  Based on the facts of this case, a § 1404(a) transfer is unavailable because the case initially could not have been brought in the Southern District of Texas.  As discussed above, El Paso's claims lack an independent basis for federal jurisdiction.  Nevertheless, even assuming that the requirements for federal jurisdiction are satisfied, venue is proper in the Northern District of Alabama rather than the Southern District of Texas.  Specifically, this case concerns the resolution of competing claims to an interest in real property located within this district, which renders venue proper here.  *See* 28 U.S.C. § 1391(a)(2) ("A civil action wherein jurisdiction is founded only on diversity of citizenship may . . . be brought *only* in . . . a judicial district in which . . . a substantial part of property that is the subject of the action is situated . . . .") (emphasis added).  Because El Paso

originally could not have brought this case in the Southern District of Texas, transfer under § 1404(a) is unavailable.

On the other hand, § 1412 does authorize the court to transfer this case. Critically, under § 1412, transfer does not depend on whether the case could have been filed in the proposed transferee forum. Instead, the inquiry turns solely on whether "the interest of justice" or "the convenience of the parties" favors transfer. "The 'interest of justice' prong is 'a broad and flexible standard which must be applied on a case-by-case basis.'" *In re Bruno's, Inc.*, 227 B.R. 311, 324 (Bankr. N.D. Ala. 1998) (quoting *In re Manville Forests Prods. Corp.*, 896 F.2d 1384, 1391 (2d Cir. 1990)). Although the court has broad discretion regarding transfer, *see, e.g.*, *In re Terry Mfg. Co., Inc.*, 323 B.R. 507, 509 (Bankr. M.D. Ala. 2005) (citations omitted), the following factors are generally relevant to § 1412's "interest of justice" analysis: (1) economics of estate administration; (2) presumption in favor of the "home court;" (3) judicial efficiency; (4) ability to receive a fair trial; (5) the state's interest in having local controversies decided within its borders by those familiar with its laws; (6) enforceability of any judgment rendered; and (7) the plaintiff's original choice of forum. *Bruno's*, 227 B.R. at 324-25 (collecting cases). The interest of justice favors transfer of this case to the Southern District of Texas.

First, "[m]any courts have held that the most important factor to be considered in determining whether to transfer venue of a bankruptcy proceeding under the interest-of-justice prong is whether transfer would promote the economic and efficient administration of the bankruptcy estate." *Mello v. Hare, Wynn, Newell & Newton, LLP*, No. 10-243, 2010 U.S. Dist. LEXIS 53518, at *12 (M.D. Tenn. May 30, 2010) (citing *Bruno's*, 227 B.R. at 324). In this regard, the first factor – economics of estate administration – and third factor – judicial efficiency – merge into a single inquiry: whether

transferring the civil proceeding to the transferee court facilitates the efficient administration of the bankruptcy. *See Bruno's*, 227 B.R. at 325 n.45 ("[Efficient administration of the bankruptcy estate] is essentially broken down into 'economics of estate administration' and 'judicial efficiency' in this court's analysis.").

Transferring this case would obviously promote the efficient administration of the bankruptcy estate. Because "the bankruptcy court is more familiar with the bankruptcy action and what may be required for efficient administration of the estate and . . . the bankruptcy court is better positioned to determine how and to what extent this action will affect administration of the bankruptcy estate," this factor strongly weighs in favor of transfer. *Froelich v. Sequoia Leisure Holdings, Inc.*, No. 09-2767, 2009 U.S. Dist. LEXIS 57674, at *6 (D.N.J. July 2, 2009) (citing *Abrams v. Gen. Nutrition Cos., Inc.*, No. 06-1820, 2006 U.S. Dist. LEXIS 68574, at *9 (D.N.J. Sept. 25, 2006); *Hohl v. Bastian*, 279 B.R. 165, 178 (W.D. Pa. 2002)). The Southern District of Texas, therefore, is better suited to evaluate the impact of this civil proceeding because, as El Paso has accurately explained, "[t]he resolution of this litigation is . . . necessary for the Bankruptcy Court to adequately determine CMV's assets and properly administer CMV's bankruptcy estate." (Doc. #12 at 20).

In response, HighMount and ConocoPhillips argue only that "[t]his case has been litigated in the State Court for over two years and involves questions of Alabama law. All parties are represented by Alabama counsel and have participated in mediation in hopes of resolving the dispute. Judicial efficiency is best promoted by keeping this case in Alabama." (Doc. #9 at 23). At best, HighMount and ConocoPhillips have suggested that this litigation carries sunken costs associated with attempts at informal resolution, but they have not suggested that transfer would require inefficiently duplicative efforts. Indeed, the procedural history strongly suggests that this

18

case, from a judicial standpoint, is nearer its origin than its endpoint, as HighMount only recently answered El Paso's complaint. (Doc. #18). The court, therefore, cannot conclude that transferring this civil proceeding would be an exercise in inefficiency.

Relatedly, § 1412's consideration of the home court presumption strongly informs the efficiency analysis. *In re Harnischfeger Indus., Inc.*, 246 B.R. 421, 440 (Bankr. N.D. Ala. 2000) ("[T]he home court presumption was created to facilitate an economic and efficient administration of the debtor's estate."). "The 'home court' is the bankruptcy court where the debtor's case is pending." *Shatzki v. Abrams*, No. 09-2046, 2010 U.S. Dist. LEXIS 7987, at *9 (E.D. Cal. Jan. 11, 2010) (citation omitted). "[T]he interests of the bankruptcy estate are paramount," and these interests create "the strong presumption in favor of the 'home court.'" *RFF Family P'ship, LP v. Wasserman*, No. 07-1617, 2010 U.S. Dist. LEXIS 57191, at *27-28 (N.D. Ohio Jan. 29, 2010) (citations omitted). Courts crafted this presumption because "[t]here is a strong policy that an adversary proceeding should be conducted in the same court as that in which the debtor's case is pending." *Sudbury, Inc. v. Dlott*, 149 B.R. 489, 492-93 (Bankr. N.D. Ohio 1993) (citation omitted); *id.* at 493 ("There is a general presumption that all matters involving a bankruptcy should be tried in the court in which the bankruptcy is pending.") (citation and internal quotation marks omitted); *see also Manville Forest Prods. Corp.*, 896 F.2d at 1391 ("[T]he district in which the underlying bankruptcy case is pending is presumed to be the appropriate district for hearing and determination of a proceeding in bankruptcy.") (citations omitted).

Here, CMV filed its bankruptcy petition in the Southern District of Texas, which renders that court the presumptively proper venue for related civil proceedings. Nevertheless, because El Paso raised the request to transfer, HighMount and ConocoPhillips argue that this fact should weaken the

presumption.  (Doc. #9 at 21-22).  To make this argument, they rely on the *Harnischfeger* decision, in which the court concluded that "where the debtor is a non-movant in the motion to transfer venue to the home court, [there is] very little reason to support the home court presumption and [it] will [be] value[d] . . . less than if the debtor had joined in the motion."  246 B.R. at 440.  According to the *Harnischfeger* court, the home court "presumption exists to help the debtor, not to facilitate forum-shopping for co-defendants."  *Id.*

HighMount and ConocoPhillips's reliance on *Harnischfeger* is misplaced for two reasons. First, even as the *Harnischfeger* court acknowledged, the debtor's failure to raise the motion merely "dilutes" the presumption – it does not extinguish it altogether.  *Harnischfeger*, 246 B.R. at 440. Here, to the extent that the presumption is weakened by El Paso raising the transfer request, the presumption is correspondingly strengthened given the dynamics of this case.  As discussed above, because CMV is procedurally necessary, which precludes severed litigation, the Southern District of Texas, as the home court, is in the best position to evaluate the parties' remand and abstention arguments.  In this regard, the purpose behind the home court presumption is served because only the Southern District of Texas can meaningfully assess whether this case should proceed in state court or as an adversary proceeding alongside the bankruptcy.  Second, although CMV formally did not request the transfer, the proceedings in the Southern District of Texas reveal that CMV endorses El Paso's request.  In particular, El Paso requested the Southern District of Texas to lift the automatic stay to permit removal in order to file the present transfer motion.  (Doc. #13-3 at 1).  CMV, aware of the implications, consented to the relief from the automatic stay with the understanding that El Paso, in turn, would request this court to transfer the case to the Southern District of Texas.  (Doc.

#13-3 at 1).   Consequently, *Harnischfeger*, insofar as it purportedly dulls the home court presumption on the premise that the debtor has not requested the transfer, is factually distinguishable.

Regarding the state's interest in having the litigation resolved in Alabama, the court finds this factor is insufficient to counterbalance the strong justifications for transfer.   HighMount and ConocoPhillips argue that "Alabama law is controlling, and the dispute involves Alabama property and mineral rights conveyed by Alabama owners."  (Doc. #9 at 23).   Although "the courts of this state would prefer to interpret the laws of the state of Alabama rather than a court in another state," *Bruno's*, 227 B.R. at 328, in the analytically related context of § 1404(a) transfers, "the general view is that 'courts can just as easily apply the law of another state as easily as their own.'"  *Creekridge Capital, LLC v. La. Hosp. Ctr., LLC*, 410 B.R. 623, 631 n.4 (D. Minn. 2009) (quoting *Clergy Fin., LLC v. Clergy Fin. Servs., Inc.*, 598 F. Supp. 2d 989, 995 (D. Minn. 2009)).   In this regard, neither party has suggested that this case presents novel or particularly complex issues better resolved by an Alabama court.   Indeed, HighMount and ConocoPhillips suggest that this case may be resolved only "in a matter of months."  (Doc. #9 at 10).   Accordingly, the claims in this case are not the sort which implicate considerations of comity or necessitate local resolution.

Finally, the remaining factors – the ability to receive a fair trial, the enforceability of a judgment rendered, and the plaintiff's original choice of forum – are neutral as applied here.   First, on the record before it, the court cannot discern the relative advantage, from an equitable perspective, of the parties litigating in either court.   Second, as HighMount and ConocoPhillips acknowledge, "[a] judgment would be equally enforceable in Alabama or Texas, so the enforceability factor does not weigh in favor of either forum."  (Doc. #9 at 23).   Third, regarding the plaintiff's original choice of forum, that factor is relevant only when the transfer is sought over the plaintiff's objection.

21

Generally speaking, courts describe this factor as requiring the "movant" to "overcome the presumption" in favor of the plaintiff's forum. *See, e.g.*, *Luciano v. Maggio*, 139 B.R. 572, 577 (E.D.N.Y. 1992). If, however, the plaintiff is the moving party, then the presumption becomes inapplicable. Here, El Paso (*i.e.*, this case's Plaintiff) has requested the transfer. Consequently, El Paso's motion does not disturb the strong policy respecting a plaintiff's choice of forum. These factors, therefore, do not weigh for or against transfer.

The balance of factors strongly counsel in favor of transfer. Transfer facilitates the efficient administration of the bankruptcy estate and effectuates the purposes underlying the home court presumption. The remaining factors are insufficient to outweigh these concerns. Therefore, transfer pursuant to § 1412 is appropriate in this case.

## IV.    CONCLUSION

For the reasons outlined above, El Paso's Motion to Transfer is due to be granted. Upon transfer to the Southern District of Texas, HighMount and ConocoPhillips are free to renew their request to remand or to abstain with that court. A separate order consistent with this Memorandum Opinion will be entered contemporaneously herewith.

**DONE** and **ORDERED** this _____12th_____ day of July, 2010.

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE

22